UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION, CANTON

| | |
|---|---|
| In re:<br><br>TWIN CITY HOSPITAL,<br><br>Debtor. | Case No. 10-64360<br><br>Chapter 11<br><br>Judge Russ Kendig |

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS PURSUANT TO SECTIONS 361 AND 364(D): (I) AUTHORIZING THE DEBTOR TO OBTAIN POSTPETITION FINANCING FROM WELLS FARGO BANK, NATIONAL ASSOCIATION AS INDENTURE TRUSTEE; (II) GRANTING CERTAIN SECURITY INTERESTS; (III) GRANTING ADEQUATE PROTECTION AND (IV) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001**

The above captioned debtor and debtor in possession (the "Debtor") hereby moves the Court, pursuant to sections 361 and 364(d) of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for the entry of an interim order authorizing the Debtor to obtain postpetition secured credit in the maximum amount of $500,000, pursuant to the terms of a debtor in possession credit facility (the "DIP Credit Facility") with Wells Fargo Bank, National Association as Indenture Trustee (the "Indenture Trustee") as provided in that certain proposed order authorizing the financing Motion filed herewith as **Exhibit A** (the "Financing Order[1]"), including the execution of all documents that may be related thereto; granting certain first-priority security interests and superpriority administrative expense claims to the Indenture Trustee granting adequate protection to the Indenture Trustee for the benefit of the holders of the Series 2007 Bonds (defined below); scheduling a final hearing on the Motion.

---

[1] The Financing Order also includes language proposing to authorize the Debtor's use of cash collateral on a final basis, as consented to by the Indenture Trustee and The Commercial & Savings Bank, upon the terms set forth herein.

{2452682:}

In support of this Motion, the Debtor respectfully represents as follows:

## I. Background

1. On October 13, 2010 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is continuing in possession of its property and is operating and managing its business, as a debtor in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and § 157. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The venue of Debtor's chapter 11 case and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. Detailed facts regarding the Debtor and reasons for the commencement of its chapter 11 case are set forth in the Affidavit and Statement of Douglas J. Ross, Sr., Chairman of the Board of Trustees, in Support of Chapter 11 Petitions and First Day Motions, Docket No. 2 (the "Ross Affidavit").

**A. The Debtor**

4. Founded in 1912, the Debtor is an independent, not-for-profit entity, organized exclusively for charitable, scientific and educational purposes, and holds tax exempt status in accordance with Section 501(c)(3) of the Internal Revenue Code. The Debtor has no sponsor or parent organization, and is governed by a Board of Trustees (the "Board") consisting of thirteen total members nominated as follows: (i) twelve members, including the Chief Executive Officer, elected by the Board; and (ii) one member nominated by the Twin City Hospital Medical Staff.

5. The Debtor is a 25-bed critical access hospital ("CAH") located in the Village of Dennison, Tuscarawas County, Ohio ("Dennison"), a community approximately 100 miles east of Columbus, Ohio. The Debtor provides a broad spectrum of acute care services including, but

not limited to: (i) surgery and recovery; (ii) cardiopulmonary services; (iii) radiological imaging; (iv) sports injury and rehabilitation; (v) pharmacological services; and (vi) diabetic wellness. The Debtor has been the primary acute care center for Dennison since its founding in 1912. On January 11, 2001, the Debtor was approved by the United States Department of Health and Human Services, pursuant to the requirements set forth at 42 Code of Federal Regulations, Part 485, for participation in the Medicare Program as a CAH.

6. In addition to the CAH located at 819 North First Street, Dennison, Ohio, the Debtor owns property located at 17 Fuhr Street, Dennison, Ohio and 808 N. First Street, Dennison, Ohio. Both properties are utilized by the Debtor for storage.

7. The Debtor's primary service area consists of Dennison and its surrounding communities. The Debtor's patient mix consists of individuals covered by Medicare and Medicaid, individuals with third-party insurance coverage, and individuals who self-pay.

8. Most recently, the Debtor completed construction on a new 27,000 square foot Medical Center to provide superior medical services to the community. The Medical Center includes a new emergency services department, in addition to cardiopulmonary, imaging, laboratory and surgery departments. Housing nearly all patient care functions, the Medical Center was designed to capture the most current medical and patient care technologies, while, at the same time, providing efficiency and convenience to the community.

B.     **The Debtor's Prepetition Debt Structure**

9. On September 1, 2007, the County of Tuscarawas issued the Hospital Facilities Revenue Bonds, Series 2007, in the aggregate amount of $16,775,000 (the "Series 2007 Bonds"). In connection with the Series 2007 Bonds and that certain Indenture of Trust between U.S. Bank National Association and the County of Tuscarawas, Ohio, the proceeds of the Series 2007 Bonds were loaned to the Debtor, with such loan documented by certain prepetition financing

{2452682:}                                                3

agreements executed by the Debtor, including the Master Trust Indenture, the Supplemental Master Trust Indenture Number One and Mortgage and Security Agreement, the Twin City Hospital Series 2007 Note and the Twin City Hospital Subordinated Series 2007 Note, together with all amendments thereto and extensions thereof and all security agreements and instruments related thereto (collectively, the "Prepetition Financing Agreements"). The purpose of the Series 2007 Bonds was to finance the construction and installation of expanded hospital facilities.

10. In addition to the Series 2007 Bonds, the Debtor executed that certain Promissory Note and Commercial Security Agreement between the Debtor and The Commercial & Savings Bank ("Commercial Savings," together with the Indenture Trustee, the "Prepetition Secured Lenders") which established a line of credit for the benefit of the Debtor in the maximum of $250,000 (the "Commercial LOC"). The purpose of the Commercial LOC was to assist the Debtor in financing certain prepetition working capital needs related to the hospital facilities.

11. As of the Petition Date, $16,775,000 in unpaid principal and $472,267.13 in accrued but unpaid interest remains due and owning by the Debtor to the Indenture Trustee under the Series 2007 Bonds and the Prepetition Financing Agreements (the "Bond Claim"). Further, $250,000 remains due and owning by the Debtor to Commercial under the Commercial LOC.

12. The Debtor has obtained authority to continue using cash collateral on an interim basis and has previously provided adequate protection to its Prepetition Secured Lenders. <u>See</u>, Docket No. 50, *Interim Order (I) Authorizing the Debtor to (A) Use Cash Collateral Pursuant to 11 U.S.C. § 363 and (B) Providing Adequate Protection Pursuant to 11 U.S.C. §§ 361 and 363 and (II) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001*.

13. Notwithstanding its ability to use cash collateral on an interim basis, the Debtor anticipates that it will experience a cash shortfall no later than mid to late November, 2010. To

prepare for that possibility, the Debtor has sought debtor in possession financing from the Indenture Trustee.

C. **The DIP Credit Facility**

14. After considerable negotiation, the Debtor has obtained a $500,000 DIP Credit Facility from the Indenture Trustee, subject to Bankruptcy Court approval. Pursuant to the Financing Order, which details the agreed upon terms for the DIP Credit Facility as negotiated between the Debtor and the Indenture Trustee. The DIP Credit Facility is summarized below[2]:

| | |
|---|---|
| *Amount:* | The DIP Credit Facility provides the Debtor the ability to borrow up to a maximum of $500,000 to be used by the Debtor for payment of expenses as set forth in the debtor in possession budget (the "DIP Budget"), attached hereto as <u>Exhibit B</u>.[3] |
| *Eligibility:* | The Debtor will be able borrow, on a weekly basis, such amount of the DIP Credit Facility as is required for payment of expenses set forth in the DIP Budget in such week in an amount equal to 100% of the projected operating deficit for such week. |
| *Security:* | Under the DIP Credit Facility, the Indenture Trustee will obtain: (i) senior and priming first priority liens and security interests on substantially all of the Debtor's assets, including postpetition accounts receivable and Avoidance Actions (the "Collateral") to secure the DIP Obligations; and (ii) a superpriority administrative expense claim with priority over any and all unpaid administrative expenses and diminution claims to secure the DIP Obligations. Except as authorized under the Financing Order, the Debtor agrees not to grant liens on, or security interest in the Pre-Petition Bond Collateral, the Commercial Collateral, the Post-Petition Cash Collateral, without the express consent of the Indenture Trustee and/or Commercial Savings, as applicable. |
| *Term:* | The Debtor is obligated to immediately repay the outstanding balance on the DIP Credit Facility upon the Termination Date, |

---

[2] This Motion provides a summary of the terms and conditions contained in the Financing Order. To the extent any term or condition is different from the term or condition in the Financing Order, the Financing Order controls.

[3] The Debtor and the Indenture Trustee continue to work together on the finalization of the DIP Budget. The final DIP Budget, which the parties anticipate will be submitted to the Court at the hearing on this Motion, will be substantially in the same form as Exhibit B attached hereto, subject to the final approval of the Indenture Trustee.

{2452682:} 5

| | |
|---|---|
| | as that term is defined in the Financing Order. |
| *Interest Rate:* | The DIP Credit Facility shall not accrue interest unless and until the occurrence of a Termination Event, as that term is defined in the Financing Order. In the event of a Termination Event, all outstanding obligations under the DIP Credit Facility shall accrue interest at the rate of 6.25% per annum. |
| *Modification of Automatic Stay:* | Subject to the terms of the Financing Order, the Indenture Trustee and/or Commercial Savings, as applicable shall be automatically relieved from any further stay under Section 362 on enforcement of its respective Liens, Supplemental Lien and/or Rollover Lien against the Collateral without further order of the Court. |
| *Release:* | Subject to the rights of the Creditors' Committee to make a Creditors' Committee or Third Party Challenge, the Debtor has waived, released and discharged and waives, releases, and discharges the Indenture Trustee, holders of the Bonds, and their respective affiliates, agents, attorneys, officers, directors and employees from any and all causes of action arising out of or relating to the Bonds and the Bond Documents. |
| *Carve-Out:* | The Financing Order provides a Carve-Out from its interest in the Cash Collateral, the Pre-Petition Bond Collateral, the Post-Petition Cash Collateral, the Collateral, for expenses and professional fees incurred during the pendency of the chapter 11 case for (i) accrued but not yet paid fees of the Debtor's professionals, Creditors' Committee and Ombudsman, as provided under the DIP Budget, and (ii) accrued but not yet paid fees under 28 U.S.C. § 1930. |
| *506(c) Waiver:* | In consideration of the financing and the consent for use of Cash Collateral, the Financing Order provides a section 506(c) waiver and no costs or expenses of administration shall be imposed against the Indenture Trustee or Commercial Saving or the Cash Collateral or the Pre-Petition Bond Collateral or the Post-Petition Cash Collateral or the Collateral, subject to the Carve-Out. |
| *Adequate Protection:* | The Debtor grants the Indenture Trustee a junior Lien on all Collateral to secure the Bond Claim that is junior to (i) the security interests granted to the Indenture Trustee to secure the DIP Credit Facility; (ii) leased or purchase money-financed equipment of the Debtor which was on the Petition Date subject to valid and perfected security interests; (iii) any existing, valid and perfected security interests senior to the security interests of the Indenture Trustee as of the Petition |

Date securing the Bond Claim; and (iv) the Carve Out.

15. Without the availability of funds provided under the DIP Credit Facility, the Debtor will be unable to finance its working capital needs during the pendency of its chapter 11 case. If the Debtor is unable to finance its working capital needs, the going-concern value of the Debtor's business and the Debtor's efforts to successfully reorganize will be quickly eroded given that the Debtor will be forced to close operations. The preservation of the ongoing business of the Debtor is of utmost significance and importance to the Debtor's successful reorganization. Furthermore, if the Debtor is not able to continue operations, then the likely result would severely and irreparably harm not only the Debtor's estate and creditors, but would jeopardize access to critical emergency and medical care to a significant number of citizens in and around Dennison.

## II. Relief Requested

16. By this Motion, the Debtor seeks authority to: (i) enter into the DIP Credit Facility on substantially the terms described in the proposed Financing Order at <u>Exhibit A</u> attached hereto, including the execution of all documents that may be related thereto; (ii) grant certain first-priority security interests and superpriority administrative expense claims to the Indenture Trustee; and (iii) grant adequate protection to the Indenture Trustee for the benefit of the holders of the Series 2007 Bonds.

17. Section 364(d) of the Bankruptcy Code provides that the court may authorize a debtor to obtain credit or incur debt secured by a senior or equal lien on property of the estate that is subject to a lien, provided the debtor is unable to obtain such credit otherwise and provides adequate protection of the interest of the lien holder to be "primed."

18. The Debtor is unaware of any third party, exclusive of the Indenture Trustee, that would be willing to extend financing to the Debtor upon terms more favorable than those

{2452682:}                                              7

10-64360-rk    Doc 81    FILED 11/01/10    ENTERED 11/01/10 19:27:38    Page 7 of 11

proposed by the Indenture Trustee. Specifically, pursuant to the proposed terms, the Debtor is not obligated to pay interest upon the funds extended by the Indenture Trustee unless a Termination Event occurs and there are no other fees and expenses associated with the proposed DIP Credit Facility. As a result, the Debtor will be in a position to conserve cash that normally, and under a typical financing situation, would be utilized to pay interest, or some portion thereof, as well as other fees and expenses  The Debtor will be able to make use of the cash conserved to further the operation of its business while it formulates it reorganization strategy.

19. The terms of the DIP Credit Facility are advantageous to the Debtor. Given it terms and conditions, the Debtor believes the DIP Credit Facility from the Indenture Trustee represents the best terms available to the Debtor.

20. Bankruptcy courts generally grant a debtor considerable deference in acting in accordance with its business judgment. Bray v. Shenandoah Fed. Sav. & Loan Ass 'n (In re Snowshoe Co., Inc.), 789 F.2d 1085, 1088 (4th Cir. 1986). Where there are few lenders likely to be able and willing to extend the necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." In re Sky Valley, Inc., 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *affirmed* Anchor Sav. Bank FSB v. Sky Valley, Inc., 99 B.R. 117, 120 n.4 (N.D. Ga. 1989); In re Ames Department Stores, Inc., 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990). The Debtor believes, in its business judgment, that the terms and conditions of the DIP Credit Facility proposed by the Indenture Trustee represent the best terms available. In re Lifeguard Indus., Inc., 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983) ("Business judgment should be left to the board room and not to this Court.").

B. **Adequate Protection of the Prepetition Secured Lenders' Liens**

21. The goal of adequate protection is to safeguard the secured creditor from diminution in the value of its interest during the Chapter 11 reorganization. In re 495 Central

Park Avenue Corp., 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992). In other words, the proposal should provide the prepetition secured creditor with the same level of protection it would have had if there had not been postpetition financing. In re Swedeland Development Group, Inc., 16 F.3d 552, 564 (3rd Cir. 1994). In determining these values, the courts have considered 'adequate protection' a concept which is to be decided flexibly on the proverbial 'case-by-case' basis. In re Martin, 761 F.2d 472 (8th Cir. 1985); In re Monroe Park, 17 B.R. 934 (D.C. Del. 1982). Since 'value' is the linchpin of adequate protection, and since value is a function of many factual variables, it logically follows that adequate protection is a question of fact. In re George Ruggiere Chrysler-Plymouth, Inc., 727 F.2d 1017 (11th Cir. 1984); In re Bank Hapoalim B.M., Chicago Branch v. E.L.I., Ltd., 42 B.R. 376 (D.C. Ill. 1984); Brookfield Production Credit Association v. Borron, 36 B.R. 445 (D.C. Mo. 1983), aff'd, 738 F.2d 951 (8th Cir. 1984).

22. To satisfy the second requirement of section 364(d) — the adequate protection requirement — the Debtor proposes to provide the Indenture Trustee for the benefit of the holders of the Series 2007 Bonds a security interest on all Collateral to secure the Bond Claim that is junior to (i) the security interests granted to the Indenture Trustee to secure the DIP Credit Facility; (ii) leased or purchase money-financed equipment of the Debtor which was on the Petition Date subject to valid and perfected security interests; (iii) any existing, valid and perfected security interests senior to the security interests of the Indenture Trustee as of the Petition Date securing the Bond Claim; and (iv) the Carve Out (as that term is defined in the Financing Order).

### III. Notice

23. No trustee or examiner has been appointed in this chapter 11 case. Notice of this Motion has been served on the following parties or, in lieu thereof, to their counsel, if known: (i) the United States Trustee for the Northern District of Ohio; (ii) those creditors listed on the

Debtor's List of Creditors Holding 20 Largest Unsecured Claims; (iii) the District Director of Internal Revenue; (iv) Wells Fargo Bank, National Association, Master Trustee; (v) The Commercial & Savings Bank; and (vi) any other party in interest who has filed a request for notice in the Debtor's chapter 11 case. In light of the nature of the relief requested herein, the Debtor submits that no other or further notice need be given.

### IV. No Prior Request

24. No prior request for the relief sought in this Motion has been made to this Court or any other court.

WHEREFORE, the Debtor respectfully requests that the Court enter an order, substantially in the form attached hereto as Exhibit A, pursuant to sections 361 and 364(d) of the Bankruptcy Code: (i) authorizing the Debtor to obtain postpetition financing in accordance with the terms of the DIP Credit Facility, including the execution of all documents that may be related thereto; (ii) granting certain first-priority security interests and superpriority administrative expense claims to the Indenture Trustee; (iii) granting adequate protection to the Indenture Trustee for the benefit of the holders of the Series 2007 Bonds; and (iv) granting such other and further relief as the Court may deem proper.

November 1, 2010                    Respectfully submitted,

/s/ Paul W. Linehan
Shawn M. Riley (0037235)
Paul W. Linehan (0070116)
John A. Polinko (0073967)
McDONALD HOPKINS LLC
600 Superior Avenue, East
Suite 2100
Cleveland, OH 44114-2653
Telephone: (216) 348-5400
Facsimile: (216) 348-5474
E-mail:  sriley@mcdonaldhopkins.com
         plinehan@mcdonaldhopkins.com
         jpolinko@mcdonaldhopkins.com

PROPOSED COUNSEL FOR THE DEBTOR
AND DEBTOR IN POSSESSION