# EXHIBIT A

{2454399:}
5056168v.5

In re:                              )
                                    )   Case No. 10-64360
TWIN CITY HOSPITAL,                 )
                                    )   Chapter 11
            Debtor.                 )
                                    )   Judge Russ Kendig
                                    )
                                    )

**STIPULATED (A) INTERIM FINANCING ORDER AUTHORIZING THE DEBTOR TO
(I) OBTAIN POST PETITION FINANCING WITH WELLS FARGO BANK,
NATIONAL ASSOCIATION AS INDENTURE TRUSTEE, AND (II) GRANTING
SUPERPRIORITY EXPENSE CLAIMS AND SECURITY INTERESTS; (B) SECOND
INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL AND FOR
ADEQUATE PROTECTION; AND (C) GRANTING OTHER RELIEF UNDER
11 U.S.C. §§ 105, 361, 362, 363, AND 364, FED. R. BANKR. P. 2002 AND 4001;
<u>AND LOCAL BANKRUPCTY RULE 2002-1</u>**

This Stipulated (A) Interim Financing Order Authorizing the Debtor to (I) Obtain Post

Petition Financing with Wells Fargo Bank, National Association as Indenture Trustee, and (II)

Granting Superpriority Expense Claims and Security Interests; (B) Second Interim Order

Authorizing Use of Cash Collateral and for Adequate Protection; and (C) Granting Other Relief

Under 11 U.S.C. §§ 105, 361, 362, 363, And 364, Fed. R. Bankr. P. 2002 and 4001; and Local

Bankruptcy Rule 2002-1 (this "Financing Order") is entered upon the (i) Motion of The Twin City Hospital Corporation (the "Debtor") for Order (I) Authorizing the Debtor to (A) Use Cash Collateral Pursuant to 11 U.S.C. § 363 and (B) Provide Adequate Protection Pursuant to 11 U.S.C. §§ 361 and 363, and (II) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001, Docket No. 8 (the "Cash Collateral Motion"), and (ii) Debtor's Motion for Entry of Interim and Final Orders Pursuant to Sections 361 and 364(d): (I) Authorizing the Debtor to Obtain Postpetition Financing from Wells Fargo Bank, National Association as Indenture Trustee; (II0 Granting Certain Security Interests; (III) Granting Adequate Protection and (IV) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 (the "DIP Motion") upon terms agreed to by and among the Debtor, Wells Fargo Bank, National Association, not individually but as indenture trustee for the bonds described more fully below (the "Indenture Trustee"), and The Commercial & Savings Bank ("Commercial"). For purposes of this Financing Order, Commercial and the Indenture Trustee shall be referred to herein together as the "Prepetition Secured Lenders."

Upon the terms of the Cash Collateral Motion, and the Court having conducted an interim hearing on October 19, 2010; and the Court having entered an order (the "Interim Order") on October 21, 2010, Docket No. 50; and subsequent to the Interim Order, the Debtor has requested, and the Indenture Trustee has agreed, to make DIP Loans (defined below) to the Debtor upon the terms and conditions of this Financing Order; and the statements of the parties and their respective counsel at the second hearing on the Cash Collateral Motion and the DIP Motion on October 29, 2010 (collectively, the "Second Hearing"), and the record of these proceedings, for good cause shown;

THIS COURT MAKES THE FOLLOWING FINDINGS OF FACT AND RULINGS OF LAW:

**The Debtor's Chapter 11 Case; Procedural Background; Jurisdiction; Notice**

A.       On October 13, 2010 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition for relief with this Court (the "<u>Bankruptcy Case</u>") under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").  Since the Petition Date, the Debtor has operated its businesses and managed its property as debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

B.       This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334, and this matter constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).

C.       The Debtor has properly served notice of the final hearing on the Cash Collateral Motion and the notice of the interim hearing on the DIP Motion pursuant to sections 102, 361, 362, 363 and 364 of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure 2002 and 4001[1], and Local Bankruptcy Rules 2002-1 and 9013-1, as applicable, which notice was sent to among others: (a) the Debtor's twenty (20) largest unsecured creditors; (b) the Prepetition Secured Lenders; (c) the Office of the United States Trustee; (d) all parties known by the Debtor to have liens on, or security interests in, any of the property of the Debtor; and (e) all parties that have filed a notice of appearance and request for service of documents in this proceeding.  This notice is appropriate in the particular circumstances and is sufficient for all purposes under the Bankruptcy Code and the applicable Bankruptcy Rules in respect to the relief requested.

**The Debtor's Secured Bond Obligations**

D.       The Debtor owns certain land in Dennison, Ohio, upon which it operates an acute care critical access hospital facility (the "<u>Facility</u>").  The construction, installation and equipping of modifications to the Facility was supported through the issuance of publicly traded tax-exempt

---

[1]       As used herein the Federal Rules of Bankruptcy Procedure are referred to as the "<u>Bankruptcy Rules.</u>"

bonds in the aggregate original face amount of $16,775,000 (the "<u>Bonds</u>") issued by the County of Tuscarawas, Ohio (the "<u>Issuer</u>") under that certain Master Trust Indenture, dated as of September 1, 2007 ("<u>Master Trust Indenture</u>") by and between the Debtor and U.S. Bank National Association (the "<u>Original Trustee</u>").

   E. The Bond financing was also evidenced by, among other documents, (i) an Indenture of Trust (Bond Indenture), dated as of September 1, 2007 (the "<u>Indenture</u>"), by and between the Issuer and the Original Trustee, and (ii) a promissory note in the original principal amount of $16,775,000, dated as of September 1, 2007 (the "<u>Note</u>"), given by the Debtor to evidence its obligations under the Indenture. The Indenture Trustee replaced the Original Trustee and is the current Indenture Trustee under the Indenture. The Indenture, among other things, assigned to the Original Trustee substantially all of the rights of the Issuer under the Note. The Master Trust Indenture, Indenture, Note, the Mortgage (as defined below), and the other documents entered into as part of the bond financing are referred to herein as the "<u>Bond Documents</u>."

   F. The Debtor stipulates that pursuant to the Bond Documents, the Indenture Trustee has a first priority lien and security interest in all of the Debtor's right, title and interest in personal property, accounts, and all other tangible and intangible property of the Debtor used in connection with or relating to the Facility, and pursuant to that certain Supplement Master Indenture Number One and Mortgage Security Agreement, dated as of September 1, 2007 (the "<u>Mortgage</u>"), the Indenture Trustee has a first priority lien and security interest in all of the Debtor's right, title and interest in its real property, gross receipts and personal property described in the Mortgage. Collectively, the collateral referred to in this Section is referred to herein as the "<u>Pre-Petition Bond Collateral</u>".

10-64360-rk Doc 81-1 FILED 11/01/10 ENTERED 11/01/10 19:27:38 Page 5 of 39

G. Under the terms of the Bond Documents, certain accounts were established and are held by the Indenture Trustee, including, but not limited to, (i) the Bond Fund, and (ii) the Debt Service Reserve Fund (all as defined in the Indenture). The funds previously in these accounts, and in any other accounts held by the Indenture Trustee including, but not limited to the Contingency Reserve Account in the name of the Indenture Trustee, are referred to herein as the "Trustee-Held Funds."

**The Bond Claim**

H. The Debtor acknowledges that as of the Petition Date, the amounts due and owing under the Bonds and Bond Documents are as follows (collectively, the "Bond Claim"):

(i) Unpaid principal in the amount of $16,775,000.00; and

(ii) Accrued but unpaid interests on the Bonds in the amount of $472,267.13.

The Indenture Trustee reserves any and all rights to amend the Bond Claim. Nothing herein shall be deemed to be a waiver of such rights. In the event the Indenture Trustee amends the Bond Claim to increase the amount of such claim, the Debtor may challenge any amounts in excess of (i) and (ii) above.

**The Commercial & Savings Bank Line of Credit**

I. On or about December 14, 2009, the Debtor executed that certain Promissory Note and Commercial Security Agreement between the Debtor and Commercial Savings (the "Commercial LOC") permitting the Debtor to draw, at maximum, $250,000 on the Commercial LOC.

J. In conjunction with execution of the Commercial LOC, Commercial Savings filed a UCC Financing Statement, designated document no. 200935034440, with the Ohio Secretary of State. Pursuant to the UCC Financing Statement, Commercial Savings' extension of credit to

the Debtor is secured by current and after acquired accounts of the Debtor (the "Commercial Collateral").

      K.     The Debtor acknowledges that as of the Petition Date, the amounts due and owing under the Commercial LOC are as follows (collectively, the "Commercial Claim"):

      (i)     Unpaid principal in the amount of $250,000.00; and

      (ii)     Accrued but unpaid interests on the Commercial.

Commercial Savings reserves any and all rights to amend the Commercial Claim. Nothing herein shall be deemed to be a waiver of such rights. In the event the Commercial Savings amends the Commercial Claim to increase the amount of such claim, the Debtor may challenge any amounts in excess of (i) and (ii) above.

**Debtor in Possession Financing**

      L.     The Debtor has determined that it will not be able to adequately finance its business operations by using only cash collateral and that it requires immediate access to additional financing. The Debtor has also determined that its working capital needs could be met with access to $500,000 of financing.

      M.     The Debtor needs funding as authorized herein to fund the costs and expenses associated with the operation of Debtor's business and the conduct of the Bankruptcy Case, in the amounts and categories of Debtor's budget attached hereto as **Exhibit A** (the "DIP Budget"), including the amounts reflected in the DIP Budget to provide for payment of debt service to the Indenture Trustee and payment of the professional fees and expenses of Debtor and the Creditors' Committee pursuant to Orders of this Court ("Permissible Uses").

      N.     The Indenture Trustee on behalf of the holders of the Bonds has agreed to provide the requested financing and to enter into a debtor in possession credit facility with the Debtor to fund Permissible Uses under the DIP Budget, to make loans to the Debtor up to the maximum

amount of $500,000 (the "DIP Loans") on a senior secured, superpriority basis on the terms and conditions of this Financing Order (the "DIP Credit Facility").

O.    In entering into the DIP Credit Facility, the Indenture Trustee exercised its rights and powers and used the same degree of care and skill in its exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs; and the Indenture Trustee acted consistent with its duties and responsibilities under, and entry of the Financing Order does not violate, the terms of any agreement relating to the Bonds.

P.    The Debtor's access to sufficient working capital and liquidity through borrowings under the DIP Credit Facility is vital to the preservation and maintenance of the going concern value of Debtor and to a successful reorganization of Debtor. The Debtor is unable to obtain financing on more favorable terms from sources other than the Indenture Trustee under this Financing Order and is unable to obtain adequate unsecured credit allowable under sections 364(c)(1) or 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtor is also unable to obtain secured credit from sources other than the DIP Lender that would be allowable under sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code for the purposes set forth in this Financing Order and Superpriority Claims as defined and set forth herein. The terms of the DIP Loans are fair and commercially reasonable and in the best interests of creditors.

Q.    The terms of the DIP Credit Facility and this Financing Order are fair and commercially reasonable, reflect the Debtor's prudent exercise of business judgment consistent with its fiduciary duties and constitute reasonably equivalent value and fair consideration.

R.    The terms of the DIP Credit Facility have been negotiated in good faith and at arm's length among Debtor and the Indenture Trustee, and all of Debtor's obligations and indebtedness arising under, in respect of or in connection with the Financing Order, including

without limitation, any and all amounts due, whether now existing or hereafter arising, under the DIP Loans or any related financing document, owed or owing to the Indenture Trustee by Debtor, in each instance, whether absolute or contingent, direct or indirect, secured or unsecured, due or not due, primary or secondary, joint or several, arising by operation of law or otherwise, and all interest and other charges thereon, including post-petition interest (collectively, the "DIP Obligations"; and together with the Bond Claim, the "Obligations"), shall be deemed to have been extended by the Indenture Trustee in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Obligations, the Liens (as defined below) and the Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Financing Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise, or modification of the terms of the financing authorized by this Financing Order.

S.     The Debtor has requested immediate entry of this Financing Order under Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and waiver of any applicable stay under Bankruptcy Rule 6004(h).  Absent granting the relief sought by this Financing Order, the Debtor's estate will be immediately and irreparably harmed.  Consummation of the financing under this Financing Order is in the best interest of the Debtor's estate consistent with its fiduciary duties.

**Use of Cash Collateral and Need for Adequate Protection**

T.     The Debtor has also requested the use of Cash Collateral (as defined below) in connection with the Bankruptcy Case to preserve the value of the Facility and its business.  The Indenture Trustee and Commercial Savings consent to the use of cash collateral solely upon the terms and conditions of this Financing Order.

U.     Without the use of cash collateral, the Debtor would suffer immediate and irreparable harm and would likely be required to cease operations immediately.  Further, an inability to use cash collateral would disrupt the Debtor as a going concern, and would eliminate or significantly decrease the likelihood of a successful orderly disposition of the Debtor's assets in this Bankruptcy Case, and would not be in the best interests of the Debtor, its respective estate or creditors.  The Debtor is prepared to provide adequate protection of the liens and security interests of the Indenture Trustee and Commercial Savings, as set forth in this Financing Order.

V.     The Debtor has acknowledged and admitted that the Bond Claim is secured by valid, enforceable, duly perfected liens on and security interests in the Pre-Petition Bond Collateral pursuant to the Bond Documents, not subject to avoidance or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

**Section 552(b)**

X.     The Indenture Trustee is entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code.

**Section 506(c) Waiver**

Y.     In consideration of the DIP Loans, the Carve Out (as defined below) and other good and valuable consideration provided herein, the Indenture Trustee has requested a waiver of the provisions of section 506(c) of the Bankruptcy Code.

**Notice**

Z.     Notice of the entry of the Interim Order and of the Second Hearing was given on October 21, 2010 to (i) Daniel S. Bleck, Esq. and Adrienne K. Walker, Esq., Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., One Financial Center, Boston, Massachusetts, 02111, counsel to the Indenture Trustee, (ii) Frank J. Rose, Jr., Esq. and Paul Hervey, Esq., Fitzpatrick, Zimmerman & Rose Co., L.P.A., P.O. Box 1014, New Philadelphia, Ohio 44663, counsel to

Commercial Savings, (iii) counsel for any Creditors' Committee appointed in this case or, if no Creditors' Committee is appointed, the Debtor's 20 largest unsecured creditors, (iv) the United States Trustee, and (v) any party that has filed a notice of appearance in this case (collectively, the "Notice Parties") in accordance with the Interim Order. Such notice constitutes good and sufficient notice of the Cash Collateral Motion, DIP Motion and the Second Hearing under the circumstances in accordance with Bankruptcy Rules 4001(b), 4001(c) and Section 102(1) of the Bankruptcy Code, as required by Sections 363(c), 363(c), 364(c) and 364(d) of the Bankruptcy Code.

**Good Cause; Commercially Reasonable**

AA.    Good and sufficient cause has been shown for the entry of this Financing Order. Among other things, the entry of this Financing Order will enable the Debtor continued use of Cash Collateral and access to the DIP Loans, which will allow the Debtor to continue the operation of its business and avoid immediate and irreparable harm to the Debtor's estate and its property.   Entry of this Financing Order is in the best interests of the Debtor, its creditors, and its estate. Approval of the DIP Credit Facility is vital to avoid immediate and irreparable harm to the Debtor's estate, and is therefore in the best interests of the Debtor's estate.

BB.    To the extent any portion of the foregoing constitute rulings of law, they shall constitute this Court's rulings with respect to the matters so-stated.

**NOW, THEREFORE, THE COURT HEREBY ORDERS AS FOLLOWS:**

1.    Disposition.  The (i) DIP Motion is granted on an interim basis, and (ii) the Cash Collateral Motion is granted on a further interim basis, on the terms set forth in this Financing Order.  The date of this Financing Order shall be known as the "Effective Date."

10-64360-rk    Doc 81-1    FILED 11/01/10    ENTERED 11/01/10 19:27:38    Page 11 of 39

## DIP CREDIT FACILITY

2.      DIP Loans.  Debtor is hereby, based on entry of this Financing Order, authorized (i) to enter into the DIP Credit Facility incorporated in this Financing Order, and (ii) do all other things and execute and deliver all other documents, instruments and agreements contemplated by this Financing Order.  Without limiting the foregoing, to the extent the Indenture Trustee deems necessary, the Debtor shall execute all documents reasonably required by the Indenture Trustee to evidence the terms and conditions of the proposed borrowing under the DIP Credit Facility.

3.      Repayment Obligation; Purpose.  Debtor is obligated to immediately repay the DIP Obligations upon the Termination Date (as defined below).  The proceeds of the DIP Loans shall be used for the Permissible Uses, and subject to the terms and conditions set forth herein.

4.      Requests for DIP Loans.  So long as the Termination Date has not occurred and no Termination Event (as defined below) has occurred and is continuing, the Indenture Trustee shall make DIP Loans to pay the items set forth in the DIP Budget in the amounts and at the times set forth in the DIP Budget; provided, however that the aggregate advances under the DIP Budget shall not exceed $500,000.

5.      Disbursements under DIP Credit Facility.  Subject to the conditions contained herein, the Indenture Trustee agrees to make available disbursements to the Debtor on a weekly basis (to the extent required as set forth in the DIP Budget), commencing on the next Monday following entry of this Financing Order, for the payment of expenses set forth in the DIP Budget in such week and in the amounts set forth in such DIP Budget in an amount equal to 100% of the projected operating deficit for such week shown on the DIP Budget; provided, however, to the extent the Debtor's cash flow under the DIP Budget is better than as set forth in the DIP Budget and, as a result, the Debtor does not require use of any funds from the Indenture Trustee in a particular week, the Debtor may request and the Indenture Trustee shall advance any such funds

10-64360-rk    Doc 81-1    FILED 11/01/10    ENTERED 11/01/10 19:27:38    Page 12 of 39

in any later week in which such funds are required to the extent a Termination Event has not occurred. The Debtor shall use all funds made available to it pursuant to this Section 5 exclusively to fund the costs set forth in the DIP Budget. To the extent the DIP Budget and/or Weekly Budget Reports (as defined below) do not identify a projected operating deficit for any given week, the Indenture Trustee shall not make DIP Loans for such week.

6. <u>Interest</u>. Subject to this Section 6, the DIP Loans shall not accrue interest under the DIP Credit Facility. From and after the occurrence of a Termination Event and until such time as any and all DIP Obligations are satisfied in full in cash, the DIP Loans shall accrue interest at a rate of 6.25 percent.

7. <u>Termination Date</u>. Subject to compliance with the terms and conditions of this Financing Order, the Debtor is authorized to borrow the DIP Loans, during the period from the date of entry of this Financing Order and ending upon a Termination Event (such end date being defined as the "<u>Termination Date</u>").

8. <u>Liens</u>. As security for the DIP Obligations and the Bond Claim, effective and perfected upon the date of entry of this Financing Order, and without the necessity of the execution or recordation of filings by Debtor, of security agreements, pledge agreements, fixture filings, mortgages, hypothecs, deeds of trust, control agreements, financing statements or other similar documents, or the possession or control by the Indenture Trustee, the following security interests in and liens are hereby granted to the Indenture Trustee on and over all property and other assets of Debtor and its estate of every kind or type whatsoever, tangible, intangible, real, personal or mixed, whether now owned or hereafter acquired or arising, and whether or not encumbered prior to the Petition Date, wherever located: all property of Debtor's estate within the meaning of section 541 of the Bankruptcy Code; and all proceeds, rents and products of the foregoing (collectively, all of the foregoing property and assets of Debtor and/or its estate,

"Property"), which Property includes but is not limited to: (i) all accounts generated post-petition and proceeds thereof, (ii) all pre-petition accounts and proceeds thereof, (iii) all intangibles, (iv) all real property and the improvements and fixtures thereon (the "Land"), (v) all other assets of Debtor including but not limited to inventory and equipment, (vi) any and all cash of Debtor, (vii) all other Property of Debtor and its estate, (viii) claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code, and any other avoidance actions under Chapter 5 of the Bankruptcy Code (collectively, the "Avoidance Actions"), and (ix) the proceeds of all the foregoing (clauses (i) through (ix) collectively, the "Collateral"), provided, that "Collateral" shall not include (collectively, the "Excluded Property") any and all cash or other property received by Debtor in the form of gifts, charitable donations, bequests or grants that are by their terms, restricted in the manner in which they may be utilized by Debtor to the extent, and only to the extent, that such restrictions would prohibit the granting of any such gifts, donations, bequests or grants as collateral or prohibit the payment of any such gifts, donations, bequests or grants to the Indenture Trustee for the benefit of DIP Lenders and such prohibitions are not rendered ineffective by the Bankruptcy Code or other applicable law (all such liens and security interests granted to the Indenture Trustee pursuant to this Financing Order shall be defined as the "Liens").

9.     Senior, First Priority Priming Lien on Substantially All Assets. As security for the full and timely payment of the DIP Obligations and in addition to the superpriority administrative expense claim set forth in Section 11 hereof, the Indenture Trustee is granted pursuant to sections 364(c) and 364(d), a valid, binding, continuing, enforceable, fully-perfected, senior and priming first priority senior security interest on all Collateral that (a) will be and remain senior to the Indenture Trustee's liens relating to the Bonds; and (b) will otherwise constitute a first priority lien in all other Collateral, subject only to (i) leased or purchase money-

financed equipment of Debtor which was on the Petition Date herein subject to valid and perfected prepetition security interests; and (ii) the Carve Out (as defined below).

10.    Junior Lien.  In further consideration of the DIP Credit Facility, the Indenture Trustee for the benefit of holders of the Bonds is granted a security interest on all Collateral to secure the Bond Claim junior to (i) the Liens granted to the Indenture Trustee to secure the DIP Obligations; (ii) leased or purchase money-financed equipment of Debtor which was on the Petition Date subject to valid and perfected security interests; (iii) any existing, valid and perfected security interests senior to the security interests of the Indenture Trustee as of the Petition Date securing the Bond Claim; and (iv) the Carve Out.

11.    Superpriority Claims.  In the event and to the extent that the Collateral does not satisfy in full the DIP Obligations, then, subject to the Carve Out, pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed senior administrative expense claims against Debtor with priority over any and all unpaid administrative expenses, diminution claims and all other claims against Debtor, now existing or hereafter arising, of any kind whatsoever (the "Superpriority Claims"), including, without limitation, all other unpaid administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of Debtor, any successor trustee or any creditor, in the Bankruptcy Case or any subsequent proceedings under the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all pre- and post-petition property of Debtor and all proceeds thereof.  The Superpriority Claims granted hereunder shall also have recourse to any and all proceeds or

property (net of the costs of the recovery or disposition of such property) in respect of (i) any and all proceeds of Avoidance Actions (the "Avoidance Action Proceeds"), whether or not such proceeds or property is recovered from a judgment, settlement or otherwise, and (ii) Debtor's interests, rights, choses in action, or claims of any kind whatsoever, choate or inchoate, present or residual, which for any reason cannot be made subject to the Liens, excluding the Excluded Assets (the "Unencumbered Assets"). Prior to payment in full of the DIP Loans and all DIP Obligations (or the express written consent of the Indenture Trustee), Debtor shall not sell, pledge, hypothecate or otherwise encumber any Avoidance Action Proceeds or Unencumbered Assets (and any such sale, pledge, hypothecation or other transfer shall be void *ab initio*).

12. <u>Retention of an Investment Banker</u>. On or before three (3) days from the Effective Date, the Debtor shall engage an investment banker (the "Investment Banker") as the sales/affiliation agent for the Facility acceptable to the Indenture Trustee, pursuant to an engagement agreement acceptable to the Indenture Trustee, for the purposes of pursuing a sale of, or affiliation partner for, the Facility (the "Investment Banker Engagement Agreement"). The Debtor shall cooperate fully with the Investment Banker in the sales/affiliation process, particularly with respect to making Facility information and site visits available to potential purchasers/affiliation partners for due diligence investigation, as well as assisting the Investment Banker in preparing any and all marketing materials associated with the Facility. The Debtor shall further provide to the Indenture Trustee and shall cause the Investment Banker to provide to the Indenture Trustee, no later than one (1) business day after receipt by the Debtor or the Investment Banker, as the case may be, copies of all written proposals, expressions of interest or similar communications from prospective purchasers/affiliation partners of the Project ("Sale/Affiliation Communications") and, no later than one (1) business day after transmission by the Debtor or the Investment Banker, copies of Debtor's or the Investment Banker's

10-64360-rk    Doc 81-1    FILED 11/01/10    ENTERED 11/01/10 19:27:38    Page 16 of 39

responses to Sale/Affiliation Communications. The Debtor agrees that the Indenture Trustee will have access to and confer with the Investment Banker from time to time to discuss matters relating to the Facility and the sale/affiliation process.

13. <u>Financial Information</u>. The Debtor agrees to provide the Indenture Trustee the following information:

(i) *Marketing Report*. The Debtor, through its Investment Banker, shall provide to the Indenture Trustee regular marketing reports in form and substance reasonably acceptable to the Indenture Trustee. The report shall include a summary of marketing efforts, including Sale/Affiliation Communications, number of potential acquisition inquiries, identities of potential acquirers, indications of interest, letters of intent or offers and status of follow up with any leads.

(ii) *Weekly Budget Report*. The Debtor shall report to the Indenture Trustee in writing the budgeted amounts as set forth in the DIP Budget as compared to actual amounts on a weekly basis by Tuesday of the following week, commencing on the next Tuesday subsequent to the Effective Date (the "<u>Weekly Budget Reports</u>"). The Debtor shall provide a narrative explanation of any weekly variances of 5% or more by line item.

(iii) *Indenture Trustee's Advisors Access to Information*. The Debtor agrees that any time while DIP Obligations remain outstanding, Alvarez & Marsal ("<u>A&M</u>") and such other financial advisors retained by the Indenture Trustee, shall have reasonable access to and may confer with Quorum Health Resources, the Debtor's financial advisors and interim management, regarding the financial condition of the Debtor, including the above referenced reports. Quorum Health Resources shall make available to A&M any information reasonably requested relating to the financial condition and business operations of the Debtor.

(v)    *Additional Information.* The Debtor shall also promptly deliver such other information and supporting documentation as the Indenture Trustee may from time-to-time reasonably request with respect to any or all of the reports described in clauses (i)-(iv) above.

(vi)    *Weekly Conference Call.* On or around the Wednesday of each week, the Debtor and its advisors Quorum Health Resources and Investment Banker, shall make available representatives acceptable to the Indenture Trustee for a telephone conference call with the Indenture Trustee and/or holders of the Bonds and their respective agents, advisors and/or representatives to discuss the financial and marketing results of the preceding weekly period and such other matters as are relevant or are reasonably requested by the Indenture Trustee.

14.    <u>DIP Credit Facility Covenants</u>.    Debtor shall observe all covenants in this Financing Order at all times prior to the Termination Date.

15.    <u>Effectiveness of Credit Facility</u>.    From and after the Effective Date, the Credit Facility constitutes a valid and binding obligation of the Debtor, enforceable against Debtor in accordance with the terms of this Financing Order for all purposes during the Bankruptcy Case, any subsequently converted case of the Debtor under chapter 7 of the Bankruptcy Code or after the dismissal of the Bankruptcy Case.    No obligation, payment, transfer or grant of security under the Credit Facility or this Financing Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

<u>**AUTHORIZATION TO USE CASH COLLATERAL**</u>

16.    <u>Use Cash Collateral</u>.    Until the occurrence of a Termination Date, the Debtor is solely authorized to use as cash collateral, the following:  (i) all cash on hand of the Debtor as of

the Petition Date, plus (ii) any proceeds relating to the accounts receivable of the Debtor, solely to pay those expenses in the amounts and categories set forth on and in accordance with the DIP Budget (collectively the "Cash Collateral").

17.    Exclusion from Cash Collateral.  Nothing in this Financing Order shall entitle the Debtor to use (i) any other funds received by the Debtor during this proceeding, excluding (y) funds received from the Hospital Care Assurance Program[2] and (z) postpetition tax revenues received by the Debtor[3], each as provided in the DIP Budget, or (ii) the Trustee-Held Funds.

18.    Rollover Lien.  As adequate protection and in consideration for the use of Cash Collateral by the Debtor, the Prepetition Secured Lenders shall have and continue to have a valid, perfected and enforceable continuing replacement lien and security interest (the "Rollover Lien") to the extent of any diminution in the Pre-Petition Bond Collateral or Commercial Collateral in all assets of the Debtor existing on or after the Petition Date of the same type as the Pre-Petition Bond Collateral or Commercial Collateral, together with the proceeds, rents, products and profits thereof, whether acquired or arising before or after the Petition Date, to the same extent, validity, perfection, enforceability and priority of the respective liens and security interests of the Indenture Trustee and Commercial Savings as of the Petition Date (the "Post-Petition Cash Collateral").  The Rollover Lien shall be subject only to (i) the liens securing the DIP Obligations, (ii) valid, perfected and unavoidable liens, if any, that were existing as of the

---

[2]  The Hospital Care Assurance Program provides financial assistance to hospitals for the care provided to the indigent and underinsured.  For example, the Debtor recognized $120,064 and $118,421 in net HCAP financial assistance for the years ended December 31, 2009 and December 31, 2008, respectively.

[3] On May 2, 2006, the citizens of Dennison and Ulrichsville, Ohio, approved a property tax levy to support the Debtor. Funding received as a result of the levy is to be used to supplement the general operations of the Debtor. For example, the Debtor received revenues of approximately $134,000 and $229,000 for the years ended December 31, 2009 and December 31, 2008, respectively.

Petition Date, and senior in priority to the liens and security interest of the Indenture Trustee and/or Commercial Savings, as applicable, and (iii) the Carve Out.

19.    <u>Supplemental Lien</u>.    As additional adequate protection and in consideration for the use of Cash Collateral by the Debtor, the Prepetition Secured Lenders shall have and continue to have a valid, perfected and enforceable continuing supplemental lien and security interest (the "<u>Supplemental Lien</u>") to the extent of any diminution in the Pre-Petition Bond Collateral and Commercial Collateral in all Collateral, in the same priority between the Indenture Trustee and Commercial Savings that existed at the Petition Date.    The Supplemental Lien shall be subject only to (i) the liens securing the DIP Obligations, (ii) valid, perfected and unavoidable liens, if any, that were existing as of the Petition Date, and senior in priority to the liens and security interest of the Indenture Trustee and/or Commercial Savings, as applicable, and (iii) the Carve Out.    The Rollover Lien and Supplemental Lien shall be in addition to all other rights of the (i) Indenture Trustee, including its liens and security interests in the Pre-Petition Bond Collateral, and (ii) Commercial Savings, including its liens and security interests in the Commercial Collateral.  For the avoidance of doubt, the liens on, and security interest in, the Collateral granted to the Indenture Trustee and/or Commercial Savings under the Interim Order or this Financing Order shall not be subordinated to, or made *pari passu* with, any other lien or security interest, other than the (i) Liens securing the DIP Obligations, (ii) valid, perfected and unavoidable liens, if any, that were existing as of the Petition Date, or (iii) the Carve Out, however and whenever arising, in the Debtor's chapter 11 case or any superseding chapter 7 case.

20.    <u>Administrative Claim</u>.    As additional adequate protection and in consideration for the use of Cash Collateral by the Debtor, the Prepetition Secured Lenders shall have a Superpriority Claim to the extent of any diminution in the Pre-Petition Bond Collateral and the

Commercial Collateral; provided, however, that any Superpriority Claims provided under this Section 20 shall be junior in priority and subordinate in all respects to the (i) Superpriority Claim granted under this Financing Order to the Indenture Trustee with respect to the DIP Obligations, and (ii) the Carve Out.

21.     <u>Financial Information</u>. As additional adequate protection of the Indenture Trustee's and Commercial Savings' respective security interests in the Cash Collateral, the Debtor shall allow the Indenture Trustee and Commercial Savings reasonable access during normal business hours to the premises, officers, employees, auditors, appraisers and financial advisors of the Debtor in order to conduct appraisals, analyses and/or audits of the Pre-Petition Bond Collateral or Commercial Collateral and the Post-Petition Cash Collateral, and shall otherwise reasonably cooperate in providing any other financial information requested by the Indenture Trustee or Commercial Savings.

**PROVISIONS COMMON TO DIP CREDIT FACILITY<br><u>AND USE OF CASH COLLATERAL</u>**

22.     <u>Limitation on Use of the DIP Loans and Cash Collateral</u>. The Debtor hereby waives any and all claims and causes of action against the Indenture Trustee and the holders of the Bonds and their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, directly related to the DIP Credit Facility, any financing document and this Financing Order or the negotiation of the terms thereof. No proceeds of any DIP Loans or Cash Collateral shall be used for the purpose of: (i) objecting to, or contesting in any manner, or raising any defenses to, the validity, amount, extent, perfection, priority, or enforceability of the DIP Credit Facility, DIP Obligations, the Bonds, the Bond Documents, the Pre-Petition Bond Collateral, the Bond Claim or any liens or security interests with respect thereto, or any other

rights or interests of the Indenture Trustee therein; (ii) asserting any claims or defenses or causes of action against the Indenture Trustee or any holder of the Bonds or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors including, without limitation, any actions under chapter 5 of the Bankruptcy Code, including with respect to payments made pursuant to the Bond Documents; and (iii) seeking to modify any of the rights granted to the Indenture Trustee hereunder.   Provided, however, that Cash Collateral nor proceeds of the DIP Loans may be used by the Creditors' Committee in the amounts budgeted for the Creditors' Committee in the DIP Budget to investigate, but not commence, any claims regarding the Bonds, the Bond Documents, the Pre-Petition Bond Collateral, the Bond Claim or any liens or security interests with respect thereto.

23.     No Further Action Required; Perfection of Liens.  The approval of this Financing Order by this Court shall be sufficient and conclusive evidence of the validity, extent, enforceability and perfection of the Liens, Rollover Lien and Supplemental Lien granted to the Indenture Trustee and/or Commercial Savings.   Further, the Indenture Trustee and/or Commercial Savings are hereby authorized, but not required, to file or record any one or more financing statements, trademark filings, copyright filings, patent assignments, real estate mortgages, hypothecs, fixture filings, deeds of trust, notices of lien or similar instruments (collectively, "Notice Filings") in any jurisdiction, or take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to the Indenture Trustee and/or Commercial Savings hereunder.   The Liens, Rollover Lien and Supplemental Lien granted under this Financing Order shall constitute valid and duly perfected security interests and liens, and the Indenture Trustee and/or Commercial Savings are hereby not required to file or record any Notice Filings which otherwise may be required under federal or state law in any jurisdiction, or take any action, including taking possession, to validate and

perfect such security interests and liens, and such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge dispute or subordination. The failure of the Debtor to execute any documentation relating to the enforceability, priority or perfection of the Liens, Rollover Lien and Supplemental Lien shall in no way affect the validity, perfection or priority of the Liens, Rollover Lien and Supplemental Lien.

24. If the Indenture Trustee and/or Commercial Savings, in each of their sole discretion, elects to file any Notice Filings or otherwise to confirm perfection of such Liens, Rollover Lien and Supplemental Lien, the Debtor shall cooperate with and assist in such process, the stay imposed under section 362 of the Bankruptcy Code is hereby lifted to permit the filing and recording of a certified copy of this Financing Order or any such Notice Filings, and all such documents shall be deemed to have been filed and recorded at the time of and on the Effective Date. Any error, omission or other defect in any such filing shall not affect the validity, enforceability, priority or perfection of any Liens, Rollover Lien and Supplemental Lien granted under this Financing Order or rights under the DIP Credit Facility.

25. A certified copy of this Financing Order may, in the discretion of the Indenture Trustee and/or Commercial Savings, be filed with or recorded in filing or recording offices in addition to or in lieu of such Notice Filings, and all filing offices are hereby authorized and directed to accept such certified copy of this Financing Order for filing and recording. The Liens granted to the Indenture Trustee may be perfected against the Land by recordation of this Financing Order or abstract thereof in the appropriate state or county filing office.

26. Application of Proceeds of Collateral. The Debtor is authorized and directed to make all payments and all transfers of proceeds from the sale or other disposition of the Collateral (other than in the ordinary course of business) to reduce the Obligations and

Commercial Claim, as applicable, as provided, permitted and/or required under this Financing Order, which payments and transfers, subject to Section 40 herein, shall not be avoidable or recoverable from the Indenture Trustee and/or Commercial Savings under section 547, 548, 550, 553 or any other section of the Bankruptcy Code, or any other claim, charge, assessment, or other liability, whether by application of the Bankruptcy Code, other law or otherwise. All proceeds and collections of Collateral received by the Indenture Trustee shall be applied or deemed to be applied by the Indenture Trustee (i) first, to the DIP Obligations under the DIP Credit Facility, and (ii) second to the Bond Claim under the Bond Documents, until such pre-petition obligations are indefeasibly paid in full and completely satisfied. All proceeds and collection of Collateral secured by Commercial Savings shall be applied or deemed to be applied by Commercial Savings under the provisions of the documents evidencing the Commercial Claim. Provided, however, any application of proceeds of Collateral as provided herein shall be subject to the Carve Out.

27.     Allowance of Claim. Except with respect to the Creditors' Committee or Third Party Challenge (as defined below) at Section 40, this Financing Order constitutes a conclusive and binding determination on all parties (y) of the validity, priority and amount of the Bond Claim or the Commercial Claim, and (z) that the Indenture Trustee's security interests in the Pre-Petition Bond Collateral and Commercial Savings' security interests in the Commercial Collateral, including, without limitation, the Cash Collateral, have been duly and properly perfected and are in all respects valid and enforceable security interests and liens and not subject to any claim under Bankruptcy Code section 552(b).

28.     Carve Out; 506(c) Waiver. In consideration of the Debtor's acknowledgement of the debt due and owing, the Debtor's waiver of any claims under section 506(c) of the Bankruptcy Code or otherwise, and in exchange for the agreement that the Debtor and the

Debtor's professionals shall not seek any further reduction in, carve-out from, or lien waivers with respect to the Pre-Petition Bond Collateral or the Collateral to fund professional fees and expenses, the Indenture Trustee consents to a carve out for certain expenses and professional fees incurred during the pendency of this bankruptcy case (the "Carve Out"). For purposes hereof, "Carve Out" shall mean as of the Termination Date (i) accrued but not yet paid fees of the Debtor's professionals, Creditors' Committee and Ombudsman, solely as provided in the DIP Budget, and (ii) accrued but not yet paid fees under 28 U.S.C § 1930, which amount shall be entitled to priority over the liens and superpriority administrative expenses granted to the Indenture Trustee hereunder; provided, that nothing herein shall constitute a waiver any right of the Indenture Trustee and/or Commercial Savings to object to fees and expenses of professionals retained by the Debtor and the Creditors' Committee or to challenge any assertion that any amounts of the fees and expenses remain unpaid; and provided, further that such Carve Out shall not be available to any chapter 7 trustee or any party retained by any chapter 7 trustee. Except for the Carve Out, no costs or expenses of administration shall be imposed against the Indenture Trustee or Commercial Savings or the Cash Collateral or the Pre-Petition Bond Collateral or the Post-Petition Cash Collateral or the Collateral under section 105 or 506(c) of the Bankruptcy Code or otherwise, such claims being expressly waived by the Debtor (the "506(c) Waiver"). The Carve Out contemplated hereby is intended to represent a single surcharge against the liens, security interests and superpriority administrative expenses granted under either and both of the cash collateral and financing components of the Interim Order and this Financing Order.

29. <u>Termination of DIP Credit Facility and Use of Cash Collateral With Notice</u>.

(a) The Indenture Trustee's obligations to make DIP Loans and the Debtor's right to use Cash Collateral under this Financing Order will terminate without any further action by this Court three (3) business days after written notification sent by the Indenture Trustee

and/or Commercial Savings, as applicable, to the Debtor, any official committee of unsecured creditors, the U.S. Trustee, and all parties filing a notice of appearance herein, of the occurrence of any of the following (a "Termination Event"):

(i)     the incurrence by the Debtor of (x) administrative expenses, or any other amounts, of a type not set forth in the DIP Budget, or (y) administrative expenses of the types set forth in the DIP Budget in amounts exceeding the amounts for each type of expense set forth in the DIP Budget, except for the fees due under 28 U.S.C. § 1930;

(ii)    the failure of the Debtor to pay all undisputed administrative expenses in full in accordance with their terms as provided for in the DIP Budget;

(iii)   the failure of the Debtor to timely pay all fees due under 28 U.S.C. § 1930;

(iv)    the failure of the Debtor to pay the DIP Loans as and when due;

(v)     the earlier of (y) the date of the entry of an order of this Court appointing a chapter 11 trustee or an examiner with enlarged powers (beyond those set forth in sections 1104(c) and 1106(a)(3) and (4) of the Bankruptcy Code) for the Debtor; or (z) the date the Debtor files a motion, application or other pleading consenting to or acquiescing in any such appointment;

(vi)    the failure of the Debtor to materially comply with, keep, observe or perform any of its agreements or undertakings under this Financing Order;

(vii)   the failure of the Debtor to timely comply with the sale/affiliation milestones attached to this Financing Order as Exhibit B.

(viii)  the closing of a sale of all or substantially all of the Debtor's assets; or

(ix)    the Debtor defaults or is breach of any of the terms of the Bond Documents (other than as a result of the filing of the within chapter 11 Bankruptcy Case or the financial covenants contained in the Bond Documents) or this DIP Order.

(b)     Unless during such three (3) business day period referenced above in Section 29, the Debtor cures any Termination Event that is curable or the Debtor obtains an order by this Court for continued use of Cash Collateral, on notice to and with an opportunity to be heard by the Indenture Trustee and Commercial Savings, (i) all obligations to make DIP Loans or other financial accommodations under the DIP Credit Facility shall automatically terminate, (ii) the

Debtor's authority to use Cash Collateral hereunder shall automatically terminate, (iii) the Indenture Trustee may exercise all rights and options set forth herein exercisable upon the occurrence of a Termination Event, and (iv) the Indenture Trustee and Commercial Savings, as applicable, upon the expiration of such three (3) business day period shall be automatically relieved of any further stay under section 362 of the Bankruptcy Code, or other restriction on enforcement of its Liens, Supplemental Lien, and/or Rollover Lien against the Collateral without further order of this Court. For the avoidance of doubt, upon such Termination Event, even to the extent this Court authorizes the continued use of Cash Collateral, the Indenture Trustee shall have no further obligation to make any DIP Loans.

30.     <u>Termination of DIP Credit Facility Without Prior Notice.</u>

(a)     The Indenture Trustee's obligations to make DIP Loans under this Financing Order and Debtor's ability to use Cash Collateral under this Financing Order will automatically terminate without any further action by this Court and a Termination Event shall occur without prior notice upon the occurrence of any of the following (also a "<u>Termination Event</u>"):

(i)      The Bankruptcy Case is dismissed or converted to a proceeding under chapter 7 of the Bankruptcy Code;

(ii)     this Court suspends the Bankruptcy Case under section 305 of the Bankruptcy Code;

(iii)    the effective date of a plan of reorganization for the Debtor in the Bankruptcy Case; or

(iv)     this Financing Order becomes stayed, reversed, vacated, amended or otherwise modified in any respect without the prior written consent of the Indenture Trustee;

(v)      an order is entered in the Bankruptcy Case over the objection of the Indenture Trustee approving financing pursuant to section 364 that would grant an additional security interests or a lien on any Collateral or granting a superpriority administrative claim that is equal or superior to the Superpriority Claims, Lien, Supplemental Lien and Rollover Lien;

10-64360-rk    Doc 81-1    FILED 11/01/10    ENTERED 11/01/10 19:27:38    Page 27 of 39

(vi)     the Debtor substantially ceases or changes its business operations;

(vii)    except as provided in Section 40 with respect to any challenge by the Creditors' Committee, an adversary proceeding or contested matter is commenced challenging the validity, enforceability, priority or extent of the Indenture Trustee's Liens, liens or claims (including any attempt to subordinate the claims of the Indenture Trustee); or

(viii)   [January 7, 2011 at 2:00 p.m.]

(b)      Upon the occurrence of a Termination Event described in this Section 30, unless the Debtor obtain, within three (3) business days of the occurrence of a Termination Event described in this Section 30, an order of this Court, on notice to and with opportunity to be heard by the Indenture Trustee and Commercial Savings, determining that the Indenture Trustee and/or Commercial Savings is not entitled to relief from the automatic stay, the Indenture Trustee and/or Commercial Savings, as applicable, may exercise all rights and options set forth herein exercisable upon the occurrence of a default, and the Indenture Trustee and/or Commercial, as applicable, shall be automatically relieved of any further stay under section 362 of the Bankruptcy Code, or other restriction on enforcement Liens, Supplemental Lien and Rollover Lien and security interests, all without further order of this Court.

31.      <u>Release</u>.  Subject to the rights of the Creditors' Committee pursuant to Section 40 below, the Debtor has waived, released and discharged and hereby waives, releases and discharges the Indenture Trustee and all holders of the Bonds and their respective affiliates, agents, attorneys, officers, directors and employees, from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, the Bonds and the Bond Documents, any aspect of the prepetition relationship between the Indenture Trustee, and/or all holders of the Bonds, and the Debtor, and any other acts or omissions by the Indenture Trustee and/or all holders of the Bonds in connection with either the Bond Documents or the Indenture Trustee's

10-64360-rk    Doc 81-1    FILED 11/01/10    ENTERED 11/01/10 19:27:38    Page 28 of 39

and holders of the Bonds prepetition relationship with the Debtor. Further, the Debtor has waived and waives any and all right to object to or contest the amount of the Bond Claim or the Indenture Trustee's security interests in the Pre-Petition Bond Collateral and agrees that all such claims and security interests have been duly perfected and are in all respects valid and enforceable first priority security interests and liens.

32. <u>Failure of Adequate Protection</u>. Nothing herein shall constitute a waiver, release or modification of the rights of the Indenture Trustee to assert a claim under Bankruptcy Code sections 364(c) and 507(b).

33. <u>Deemed Request for Stay Relief</u>. This Financing Order shall be deemed to constitute a request by the Indenture Trustee for relief from the automatic stay with respect to the Pre-Petition Bond Collateral and for adequate protection as of the Petition Date.

34. <u>Amendment or Extension of DIP Budget</u>. The DIP Budget shall not be amended without the express written consent of the Indenture Trustee, which consent shall be at its sole and absolute discretion. Any amendment or modification of the DIP Budget shall not require approval by this Court to be effective. Notice of any such amendment to this Financing Order shall be filed with this Court and served on all parties entitled to notice in accordance with Bankruptcy Rule 4001(b). Following the filing of such notice of amendment, a noticed party may contest such amendment by filing a motion (the "DIP Budget Amendment Challenge") with this Court within five (5) business days of being provided notice of the effectiveness of such amendment. The timely filing and service of a DIP Budget Amendment Challenge will temporarily stay the amendment. Subject to the convenience of this Court's calendar, the hearing on any DIP Budget Amendment Challenge shall be held within five (5) business days of the date that the DIP Budget Amendment Challenge is filed. If a DIP Budget Amendment Challenge is not timely filed and served and the hearing is not timely sought, or if the relief

sought in the DIP Budget Amendment Challenge is denied, the amendment shall become immediately effective.

35.     <u>Amendment or Extension of Financing Order</u>.  This Financing Order shall not be amended without the express written consent of the Indenture Trustee, which shall be at its sole discretion.  Notice of any such amendment to this Financing Order shall be filed with this Court and served on all parties entitled to notice in accordance with Bankruptcy Rule 4001(b).  Following the filing of such notice of amendment, a noticed party may contest such amendment by filing a motion (the "<u>Amendment Challenge</u>") with this Court within five (5) business days of being provided notice of the effectiveness of such amendment.  The timely filing and service of an Amendment Challenge will temporarily stay the amendment.  Subject to the convenience of this Court's calendar, the hearing on any Amendment Challenge shall be held within five (5) business days of the date that the Amendment Challenge is filed.  If an Amendment Challenge is not timely filed and served and the hearing is not timely sought, or if the relief sought in the Amendment Challenge is denied, the amendment shall become immediately effective.

36.     <u>Modification of Stay</u>.  The automatic stay imposed by virtue of section 362 of the Bankruptcy Code is hereby vacated and modified insofar as necessary to permit (i) the Debtor to grant the Liens, Supplemental Liens and Replacement Liens to the Indenture Trustee and/or Commercial Savings, as applicable, and (ii) the parties to take any action specifically authorized or contemplated by this Financing Order or the Interim Order

37.     <u>Preservation of Rights</u>.  If any or all of the provisions of this Financing Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacatur or stay shall not affect (i) the validity, priority or enforceability of any DIP Obligations incurred prior to the actual receipt of written notice by the Indenture Trustee, as applicable, of the effective date of such reversal, modification, vacatur or stay) or (ii) the validity or enforceability of the Liens,

Replacement Lien, Supplemental Lien and the Superpriority Claims authorized or created hereunder. Notwithstanding any such reversal, modification, vacatur or stay, any DIP Obligations incurred by the Debtor to the Indenture Trustee prior to the actual receipt of written notice by the Indenture Trustee of the effective date of such reversal, modification, vacatur or stay shall be governed in all respects by the original provisions of this Financing Order, as applicable, and the Indenture Trustee shall be entitled to all the rights, remedies, privileges and benefits granted in sections 363(m) and 364(e) of the Bankruptcy Code and this Financing Order with respect to all DIP Obligations.

38. Except as expressly provided in this Financing Order or any other financing document, the Liens, Replacement Lien, Supplemental Lien, the Superpriority Claims, and the DIP Obligations, and all other rights and remedies of the Indenture Trustee and/or Commercial Savings, as applicable, granted by the provisions of this Financing Order shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting the Bankruptcy Case to a case under chapter 7, dismissing the Bankruptcy Case, terminating the joint administration of the Bankruptcy Case or by any other act or omission or (ii) the entry of an order confirming a plan of reorganization in the Bankruptcy Case and, pursuant to section 1141(d)(4) of the Bankruptcy Code. The terms and provisions of this Financing Order shall continue in the Bankruptcy Case, in any superseding chapter 7 Bankruptcy Case under the Bankruptcy Code, and the Liens, Replacement Lien, Supplemental Lien, the Superpriority Claims, the DIP Obligations, and all other rights and remedies of the Indenture Trustee and/or Commercial Savings, as applicable, granted by the provisions of this Financing Order shall continue in full force and effect.

39. <u>Limitations On Marshaling</u>. The Indenture Trustee shall not be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.

10-64360-rk    Doc 81-1    FILED 11/01/10    ENTERED 11/01/10 19:27:38    Page 31 of 39

40.    <u>Binding Effect</u>.  This Financing Order shall be binding on all parties in this case that have notice hereof, including, but not limited to, the Debtor, and any successors thereto, any chapter 11 or chapter 7 trustee that is appointed or elected in this case, and any party who has filed an objection; <u>provided</u>, <u>however</u>, that this Financing Order is without prejudice to the rights of any creditors' committee appointed in the Bankruptcy Case of the Debtor (the "<u>Creditors'</u> <u>Committee</u>") or any other third party to challenge the validity, amount, perfection, priority, extent or enforceability of the Commercial Claim, the Bond Claim, the Bond Documents, the pre-petition security interests of the Indenture Trustee or Commercial Savings, or the rights of such Creditors' Committee or any other third party to, on behalf of such estate, assert any other claims or causes of action that have been otherwise released under Section 31 of this Financing Order (a "<u>Creditors' Committee or Third Party Challenge</u>"); provided that any Creditors' Committee or Third Party Challenge (i) may only be made and appropriately filed with this Court within 60 days after the earlier of the appointment of such Creditors' Committee, or if no Creditors' Committee is appointed, 75 days from the Petition Date, and (ii) may only be made if such Creditors' Committee has acquired legal standing to assert such claims.  Unless a Creditors' Committee or Third Party Challenge is made in accordance with the procedural and time limitations set forth above, all such challenges shall be deemed finally and conclusively barred and otherwise waived; and <u>provided</u> <u>further</u> that if a Creditors' Committee or Third Party Challenge is timely made and properly filed, all potential claims and causes of actions are hereby deemed forever waived and relinquished by all parties including, but not limited to the party that filed such claim, except for those claims or causes of actions expressly asserted in accordance with this Section 40.

41.    <u>No Competing Liens</u>.  Upon entry of a Financing Order on the Motion, the Debtor, except as authorized hereunder, shall not grant liens on, or security interests in the Pre-

10-64360-rk    Doc 81-1    FILED 11/01/10    ENTERED 11/01/10 19:27:38    Page 32 of 39

Petition Bond Collateral, the Commercial Collateral, the Post-Petition Cash Collateral, or the Collateral to any other party other than the Indenture Trustee or Commercial Savings, as applicable, pursuant to section 364 of the Bankruptcy Code or otherwise without the express written consent of the Indenture Trustee and/or Commercial Savings, as applicable, which consent may be withheld by the Indenture Trustee and/or Commercial Savings, as applicable, in their sole and absolute discretion.

42. <u>Stay of Setoff, Recoupment</u>. Any holder of a claim for offset, setoff or recoupment on a postpetition account or other assets of Debtor shall be stayed and prohibited from asserting such right of setoff, offset or recoupment in any manner against any postpetition accounts or other assets of the Debtor unless and until the Indenture Trustee has received full and final payment of all Obligations and no further amounts are owed to the Indenture Trustee.

43. <u>Survival of Rights</u>. Notwithstanding the occurrence of a Termination Event, all of the rights, remedies, benefits and protections provided to the Indenture Trustee under this Financing Order shall survive such Termination Event.

44. <u>Reservation of Rights</u>. Except as provided in this Financing Order, the Prepetition Secured Lenders waive no rights under the Bankruptcy Code, any applicable law, the Bond Documents or Commercial LOC documents, including, without limitation, the right of the Indenture Trustee and/or Commercial Savings at any time to seek any relief under the Bankruptcy Code, or the right of the Indenture Trustee and/or Commercial Savings to exercise their respective rights and remedies under the Bankruptcy Code at any time. In particular, the Indenture Trustee and/or Commercial Savings reserve their respective rights to seek modification of this Financing Order.

45. <u>Further Relief</u>. Nothing herein shall (i) preclude the Indenture Trustee and/or Commercial Savings from seeking any other relief that it may deem appropriate, including relief

10-64360-rk    Doc 81-1    FILED 11/01/10    ENTERED 11/01/10 19:27:38    Page 33 of 39

from the automatic stay, or (ii) prevent the Indenture Trustee and/or Commercial Savings from asserting at some later time that its liens and security interests in the Pre-Petition Bond Collateral or Commercial Collateral are not being adequately protected.

46. <u>No Control</u>. The Indenture Trustee shall not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person," "managing agent" or "owner or operator" (as such terms or any similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar Federal or state statute) with respect to the operation or management of the Debtor, notwithstanding its consent to this Financing Order and extending financial accommodations of any type, kind or nature under this Financing Order.

47. <u>No Third Party Beneficiaries</u>. No rights are created hereunder for the benefit of any third party, any creditor, or any direct, indirect or incidental beneficiary.

48. <u>Effectiveness</u>. This Financing Order shall be deemed effective immediately and, for the avoidance of doubt, Federal Rule of Bankruptcy Procedure 6004(h) shall not apply hereto. If any or all of the provisions of this Financing Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacatur or stay shall not affect (i) the validity, extent, priority or enforceability of any obligations incurred prior to the actual receipt of written notice by the Indenture Trustee of the effective date of such reversal, modification, vacatur or stay, or (ii) the validity, extent, priority or enforceability of the liens and claims granted hereunder.

49. <u>Financing Order Governs</u>. To the fullest extent permissible under the Bankruptcy Code and existing law, the provisions of this Financing Order, including all findings, are binding on all parties in interest in the Bankruptcy Case, including the Debtor, Indenture Trustee, the Creditors' Committee, and their respective successors and assigns (including any

chapter 7 or chapter 11 trustee subsequently appointed or elected for the bankruptcy estate of any of Debtor) and inures to the benefit of the Indenture Trustee for the benefit of the holders of the Bonds, Commercial Savings, as applicable, and Debtor and their respective successors and assigns; provided that the Indenture Trustee has no obligation to extend any financing to any chapter 7 trustee or similar responsible person appointed for the bankruptcy estate of Debtor.

50.     <u>Headings</u>.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Financing Order.

51.     <u>Waiver of any Applicable Stay</u>.   Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Financing Order.

52.     <u>Final Hearing With Respect to DIP Credit Facility</u>.  A final hearing with respect to the portions of this Financing Order relating to the DIP Credit Facility is hereby scheduled for November ___ 2010 at ___:00 p.m., at which time any party in interest may present any timely filed objections to the entry of a Financing Order.  The Debtor shall, within 24 hours of entry of this Financing Order, promptly serve a copy of this Financing Order and a notice of the final haring by regular mail upon (i) Daniel S. Bleck, Esq. and Adrienne K. Walker, Esq., Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., One Financial Center, Boston, Massachusetts, 02111, counsel to the Indenture Trustee, (ii) Frank J. Rose, Jr., Esq. and Paul Hervey, Esq., Fitzpatrick, Zimmerman & Rose Co., L.P.A., P.O. Box 1014, New Philadelphia, Ohio 44663, counsel to Commercial Savings, (iii) counsel for any Creditors' Committee appointed in this case or, if no Creditors' Committee is appointed, the Debtor's 20 largest unsecured creditors, (iv) the United States Trustee, and (v) any party that has filed a notice of appearance in this case.  Such notice shall state that objections to the entry of a Financing Order shall be in writing and shall be filed with the United States Bankruptcy Clerk for the Northern District of Ohio (Eastern

Division, Canton) no later than November ___, 2010. Any objections by creditors or other parties in interest to any of the provisions of a Financing Order incorporating the terms of this Financing Order, or including any other or different provisions, shall be deemed waived unless filed and served in accordance with this Section.

53. <u>Notices</u>. All notices, requests, demands, waivers and other communications required or permitted to be given under this Financing Order shall be in writing and shall be deemed to have been duly given if (a) delivered personally, (b) mailed by first-class, registered or certified mail, return receipt requested, postage prepaid, or (c) sent by next-day or overnight mail or delivery or (d) sent by facsimile.

(a) If to the Debtor to:

> Shawn M. Riley, Esq.
> Paul Linehan, Esq.
> McDonald Hopkins
> 600 Superior Avenue, East
> Suite 2100
> Cleveland, OH 44114

(b) If to the Indenture Trustee to:

> Wells Fargo Corporate Trust Service
> Attn: Virginia Housum, Vice President, SAG Group
> Wells Fargo Bank Minnesota, N.A.
> 625 Marquette Avenue, MAC #N9303-120
> Minneapolis, MN 55479
> Fax: 612-667-9825

with a copy to:

> Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
> Attn: Daniel S. Bleck, Esq.
> Adrienne K. Walker, Esq.
> One Financial Center
> Boston, MA 02111
> Fax: 617-542-2241

(c)    If to Commercial Savings to:

The Commercial & Savings Bank
Attn:  William Tinlin, Vice President
91 Clay Street
Millersburg, OH  44654

with a copy to:

Paul Hervey, Esq.
Frank J. Rose, Jr., Esq.
Fitzpatrick, Zimmerman & Rose Co., L.P.A.
P.O. Box 1014
New Philadelphia, Ohio 44663
Fax:  330-343-3077


# # #

Prepared by:

Shawn M. Riley (0037235)
Paul W. Linehan (0070116)
McDONALD HOPKINS LLC
600 Superior Avenue, East, Suite 2100
Cleveland, OH 44114-2653
Telephone:  (216) 348-5400
Facsimile:  (216) 348-5474
E-mail:  sriley@mcdonaldhopkins.com
         plinehan@mcdonaldhopkins.com

PROPOSED COUNSEL FOR THE DEBTOR
AND DEBTOR IN POSSESSION

-and-

Daniel S. Bleck
Adrienne K. Walker
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA  02111
Telephone:  (617) 348-4498
Facsimile:  (617) 542-2241
E-mail:  dbleck@mintz.com

COUNSEL FOR WELLS FARGO, NATIONAL
ASSOCIATION AS INDENTURE, TRUSTEE

# <u>EXHIBIT A</u>

Revised 10/12/2010: 13 - Week Projections for Twin City Hospital Corporation & Physicians - Sources and Uses

TCH Chapter 11 Cash Forecast with Trustee Funds updated through October 12, 2010

| Ln | Week Beginning →→ | 1 10/11/2010 Projected | 2 10/18/2010 Projected | 3 10/25/2010 Projected | 4 11/1/2010 Projected | 5 11/8/2010 Projected | 6 11/15/2010 Projected | 7 11/22/2010 Projected | 8 11/29/2010 Projected | 9 12/6/2010 Projected | 10 12/13/2010 Projected | 11 12/20/2010 Projected | 12 12/27/2010 Projected | 13 1/3/2011 Projected | 13 Wk Total Projected |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Beginning Cash Balance | $54,989 | 109,094 | 35,276 | 59,940 | (1,268) | 2,553 | (4,182) | 75,249 | (53) | (15,786) | (10,969) | 56,463 | 28,280 | $54,989 |
| | **Projected Cash Receipts:** | | | | | | | | | | | | | | |
| 2 | Medicare | 67,089 | 67,089 | 67,089 | 67,089 | 67,089 | 67,089 | 67,089 | 67,089 | 67,089 | 67,089 | 67,089 | 67,089 | 67,089 | 883,856 |
| 3 | Medicaid | 19,943 | 19,943 | 19,943 | 19,943 | 19,943 | 19,943 | 19,943 | 19,943 | 19,943 | 19,943 | 19,943 | 19,943 | 19,943 | 259,259 |
| 4 | Other Commercial | 180,626 | 180,626 | 180,626 | 180,626 | 180,626 | 180,626 | 180,626 | 180,626 | 180,626 | 180,626 | 180,626 | 180,626 | 180,626 | 2,348,142 |
| 5 | Self Pay | 31,432 | 31,432 | 31,432 | 31,432 | 31,432 | 31,432 | 31,432 | 31,432 | 31,432 | 31,432 | 31,432 | 31,432 | 31,432 | 408,616 |
| 6 | Revenue Cycle Enhancements | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | | | | | 180,000 |
| 7 | Clinical Service Program Implementation | | | | | | | | | | | | | | |
| 8 | Cash Receipts from Patient Care | 319,990 | 319,990 | 319,990 | 319,990 | 319,990 | 319,990 | 319,990 | 319,990 | 319,990 | 319,990 | 319,990 | 319,990 | 319,990 | 4,119,873 |
| 9 | Trail Lakes Rent | | | | 35,647 | | | | | 35,647 | | | | 35,647 | 106,941 |
| 10 | Donations | | | | | | | | | | | | | | |
| 11 | Restricted Grants & Other | 3,500 | 3,500 | | 3,500 | 3,500 | | 3,500 | | 3,500 | | | 3,500 | | 21,000 |
| 12 | Cost Report Settlements | | | | | | | | | | | | | | |
| 13 | Tax Levy (TBD) | | | | | | | | | | | | | | |
| 14 | Financing | 14,136 | | | 160,000 | 73,000 | | | 170,000 | 95,000 | | | | | 500,000 |
| 15 | ICAP | | | | | | | | | | 235,000 | | | | 235,000 |
| 16 | **Total Cash Receipts** | 334,126 | 323,490 | 319,990 | 519,078 | 394,990 | 323,490 | 319,990 | 529,137 | 414,990 | 313,490 | 309,990 | 548,490 | 345,637 | 4,996,950 |
| 17 | **Total Cash Available** | 389,115 | 432,584 | 355,267 | 579,018 | 393,782 | 326,043 | 315,808 | 604,386 | 414,937 | 297,704 | 299,021 | 604,953 | 373,917 | 5,051,939 |
| | **Projected Expenditures:** | | | | | | | | | | | | | | |
| 18 | Salaries, Wages & Payroll Taxes | 85,890 | 195,000 | 83,700 | 195,000 | 83,700 | 195,000 | 83,700 | 195,000 | 83,700 | 195,000 | 83,700 | 195,000 | 83,700 | 1,758,090 |
| 19 | Administration | | | | | | | | | | | | | | |
| 20 | Employee Benefits & Withholds | | 21,364 | | 21,364 | | 21,364 | | 21,364 | | 21,364 | | 21,364 | | 128,184 |
| 21 | Supplies | 47,730 | 4,447 | 26,233 | 43,025 | 38,638 | 36,233 | 13,562 | 67,762 | 13,055 | 13,562 | 2,046 | 13,562 | 13,562 | 345,833 |
| 22 | Other Supplies | 8,876 | 1,497 | 2,893 | 3,197 | 8,876 | 2,370 | 2,047 | 8,497 | 3,197 | 1,497 | 1,197 | | | 57,201 |
| 23 | Professional Fees | 80,000 | 94,500 | | 174,500 | 174,500 | | | 174,500 | | | | | 46,800 | 570,300 |
| 24 | Purchased Services | 10,000 | 10,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 350,000 |
| 25 | Leases/Rents | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 130,000 |
| 26 | Phones/Utilities | 3,000 | 3,000 | 30,000 | 3,000 | 3,000 | 3,000 | 20,000 | 3,000 | 3,000 | 3,000 | 20,000 | 3,000 | 3,000 | 90,000 |
| 27 | License/Taxes/Insurance | 29,013 | 62,000 | 62,000 | 10,800 | 33,013 | 29,000 | 29,000 | 34,013 | 40,073 | 15,000 | 31,000 | 13,890 | 12,000 | 368,712 |
| 28 | Repairs/Maintenance | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 62,000 |
| 29 | Other Expenses | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 32,500 |
| 30 | Debt Service Payments | | | | | | | | | | | | | | |
| 31 | Patient Refunds | 1,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 37,000 |
| 32 | Critical Plant / Engineering (TBD) | | | | | | | | | | | | | | |
| 33 | **Subtotal Operational Expenses** | $280,021 | 397,308 | 245,326 | 557,786 | 391,229 | 330,225 | 190,559 | 581,939 | 430,722 | 308,671 | 192,558 | 554,173 | 229,309 | $4,689,832 |
| 34 | **Projected Ending Cash Balance** | $109,094 | 35,276 | 109,940 | 21,292 | 2,553 | (4,182) | 125,249 | 22,447 | (15,786) | (10,969) | 106,463 | 50,780 | 144,607 | $362,107 |
| | **Cost of Reorganization** | | | | | | | | | | | | | | |
| 35 | McDonald Hopkins | | | 35,000 | | | | 35,000 | | | | 35,000 | | | 105,000 |
| 36 | Broker Management Fee | | | | | | | | | | | | | | |
| 37 | General Counsel | | | 10,000 | | | | 10,000 | | | | 10,000 | | | 30,000 |
| 38 | Compliance Audit - (ltd) | | | 5,000 | | | | 5,000 | | | | 5,000 | | | 15,000 |
| 39 | Ombudsman | | | | | | | | | | | | | | |
| 40 | Trustee/Court Costs | | | | 10,000 | | | | 10,000 | | | | 10,000 | | 30,000 |
| 41 | Creditors Committee, Legal Costs | | | | 2,500 | | | | 2,500 | | | | 2,500 | | 7,500 |
| 42 | Critical Vendor Care Payments (TBD) | | | | 10,000 | | | | 10,000 | | | | 10,000 | | 30,000 |
| 43 | **Subtotal Reorganization Expenses** | | | 50,000 | 22,500 | | | 50,000 | 22,500 | | | 50,000 | 22,500 | | 317,500 |
| 44 | **Total Payments** | $280,021 | 397,308 | 295,326 | 580,286 | 391,229 | 330,225 | 240,559 | 604,439 | 430,722 | 308,671 | 242,558 | 576,673 | 229,309 | $4,907,332 |
| 45 | **Projected Ending Cash Balance** | $109,094 | 35,276 | 59,940 | (1,268) | 2,553 | (4,182) | 75,249 | (53) | (15,786) | (10,969) | 56,463 | 28,280 | 144,607 | $144,607 |

2426844