The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below.



/S/ RUSS KENDIG

Russ Kendig
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| In re: | ) CHAPTER 7 |
| | ) |
| TWIN CITY HOSPITAL, | ) CASE NO. 10-64360 |
| | ) |
| | ) JUDGE RUSS KENDIG |
| Debtor. | ) |
| | ) **MEMORANDUM OF OPINION** |
| | ) **(NOT FOR PUBLICATION)** |

On May 8, 2011, debtor filed its Motion Pursuant to Sections 105(a) and 363 of the Bankruptcy Code for an Order Authorizing the Debtor to Distribute Funds of a Deferred Compensation Plan ("motion to distribute"). A hearing on the motion was held on June 9, 2011. At hearing, John Polinko represented the debtor and Brian K. Nam represented plan participants Vaijanath Bhairappa, M.D., Varsh Gharpure, M.D., Christian Olympia, M.D., Maricelle Sorolla, M.D., Emmanuel Noche, M.D. and Laura Rollandini, CNA. (collectively the "plan participants").[1] At the close of the hearing, the court granted the plan participants leave to file a further response to the motion by June 13, 2011 and announced that the matter would be taken under advisement. This is the court's decision.

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the

---

[1] At the hearing, counsel for the plan participants stated that another doctor, Emmanuel Noche, M.D., was no longer participating in the litigation. However, Dr. Noche's withdrawal does not effect the court's decision because the remaining plan participants object to the motion on the same basis as Dr. Noche.

general order of reference entered in this district on July 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), (K) and (O) and venue is appropriate under 28 U.S.C. § 1409. The following constitutes the court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## BACKGROUND

On January 1, 2006, the debtor established a deferred compensation plan subject to Internal Revenue Code 457(b) ("457(b) Plan"). Each of the plan participants was employed pursuant to an Employment Agreement, which set forth their salaries and benefits. Payments into the 457(b) Plan were made pursuant to salary reduction agreements and deductions were made from the plan participants' biweekly paychecks.

Two of the plan participants, Dr. Gharpure and Dr. Sorolla, severed their employment prior to the debtor filing bankruptcy. At hearing, debtor admitted that the 457(b) Plan required immediate payment upon severance of employment. However, they have received no distributions from the plan. The remainder of the plan participants were employed by the debtor on the date of the filing of the bankruptcy petition. It is uncontested that, even after the bankruptcy petition was filed, the debtor continued to deduct 457(b) Plan contributions from the remaining plan participants' paychecks.

It is unclear exactly which documents constitute the 457(b) Plan. No party has provided the court with an overview of the plan documents and how they relate to each other. The documents cited by the parties at various points are as follows: the Eligible 457 Prototype Plan Salary Reduction Contributions Adoption Agreement ("Salary Reduction Agreement") (docket #301, Exhibit A); the Eligible Prototype Plan and Trust Agreement ("Prototype Plan") (docket #301, Exhibit B); and the Custody Agreement with Nationwide Trust Company, FSB ("Custody Agreement") (docket #336, Exhibit C). For the purpose of deciding the motion, the court regards all of these documents as part of the 457(b) Plan because no party challenges the applicability or authenticity of any of the documents.

The 457(b) Plan in this case provides that the plan funds are subject to the claims of the debtor's creditors as follows:[2]

> If the Employer is a Tax-Exempt Organization, the Plan is an unfunded plan

---

[2] A 457(b) plan can be offered by either a government employer or a tax exempt organization. 26 U.S.C. § 457(e)(1). While a 457(b) plan offered by a government employer must be "held in trust for the exclusive benefit of participants and their beneficiaries," no such requirement applies to a tax exempt organization, such as the debtor. § 457(g).

2

and all Deferred Compensation, property and rights to property purchased by
Deferred Compensation and all income attributable thereto remain, until paid
or made available under the Plan, the sole property and rights of the
Employer, subject only to the claims of the Employer's general creditors. No
Participant or Beneficiary will have any vested interest or secured or
preferred position with respect to an Account or have any claim against the
Employer except as a general creditor. No Participant or Beneficiary shall
have any right to sell, assign, transfer or otherwise convey his or her Account
or any interest in his or her Deferred Compensation.

457(b) (Prototype Plan ¶ 5.09). In addition, the plan states that it is subject to the claims of debtor's creditors in the event of debtor's insolvency. (Custody Agreement at 2). Per the Custody Agreement, the 457(b) Plan funds, which total approximately $419,000, are held in a custodial account by Nationwide Financial Services, Inc. as custodian. (Custody Agreement at 2).

On November 1, 2010, debtors filed a motion to obtain debtor-in-possession financing from Wells Fargo Bank, NA ("Wells Fargo"). On November 19, 2010, the court entered the final, stipulated financing order ("DIP Order"). The DIP Order provided that, in consideration for providing DIP financing, Wells Fargo would receive a senior, first priority, priming lien on substantially all of debtor's assets to secure the DIP loan amount and a junior lien on substantially all of debtor's assets to secure debtor's other obligations to Wells Fargo.[3] (DIP Order at ¶ 8–10). The debtor and Wells Fargo contend that Wells Fargo has a lien on the plan participants' 457(b) Plan contributions pursuant to the DIP Order.

It is undisputed that the plan participants were not listed in debtor's bankruptcy petition and did not receive notice of the DIP Order and motion. Given the specific facts of the case, one or more plan participants could have been included on the creditors' committee. The first notice that the plan participants received that they were at risk of losing their plan contributions was a letter sent by debtor's interim CEO, Frank Swinehart, to each of the plan participants on April 27, 2011. In the letters, Mr. Swinehart (there is no indication that he is a lawyer) explains as follows:

> The nature of a 457b [sic] plan for non-profit organizations is that they [sic]
> are not vested and remain an asset of the company subject to the rights of
> creditors until they [sic] are appropriately paid to the employee. This means
> these funds will, by law, be turned over to creditors in the bankruptcy process
> and will be lost to your account. It is an unfortunate outcome that is unique to
> this type of plan and is unavoidable.

(docket #332, Exhibit 6).

---

[3]Both liens are subject to a carve-out.

3

In addition, the letter contains a "more technical explanation" provided by an unidentified attorney. This explanation from the unseen expert is as follows:

> Twin City's 457(b) Plan is a program under Section 457(b) of the Internal Revenue Code (the "Code"). Section 457(b) of the Code permits certain qualified entities (including tax-exempt entities) to sponsor a deferred compensation plan allowing eligible employees to defer portions of their compensation on a tax-deferred basis. Twin City, as a tax-exempt entity, was able to sponsor the 457(b) Plan; however, the 457(b) Plan is subject to the requirements of ERISA and, as such, Section 457 of the Code requires that the 457(b) Plan must be "unfunded" and plan assets must not be set aside for participants or beneficiaries. The regulations to Section 457 of the Code specifically require that with respect to a tax-exempt employer, such as Twin City, "all amounts set aside under a 457 plan must remain (until paid or made available to the participant or beneficiary) solely the property and rights of the eligible employer . . . subject to the claims of the eligible employer's general creditors."

Id. (ellipsis in original).

The lack of notice and resultant inability to participate was compounded by the ham-fisted letter from the invisible legal expert indirectly advising the plan participants to abandon hope. This information was sent to the plan participants 12 days before the instant motion was filed. The letter appears to have been inelegantly orchestrated to skirt Ohio Rule of Professional Conduct 4.3 (identical to ABA Model Rule of Professional Conduct 4.3, including the comments) that restricts a lawyer from giving legal advice to an unrepresented party if the lawyer reasonably should know that the interests of the party have a reasonable possibility of being in conflict with the interests of the client. It strains credulity that the letter charade was executed without the participation of a lawyer. The excerpt is either disingenuously edited or ridiculously one-sided given the complexities in this area of law. Furthermore, the statement does not advise the plan participants to seek counsel, which is the only advice that an opposing attorney should give an unrepresented party. It appears the letter was orchestrated to evade the specifically prohibited purpose.

This case converted from a chapter 11 to a chapter 7 on June 28, 2011, following the sale of debtor's assets. As such, the interim chapter 7 trustee, Tony DeGirolamo, now stands in the shoes of the debtor-in-possession.

## LAW AND ANALYSIS

The court finds the following. First, the court finds that the 457(b) Plan funds are not property of the estate pursuant to 11 U.S.C. § 541(b)(7)(A)(i)(II) and, therefore, are not subject to Well's Fargo's lien. Second, the court finds that the debtor is judicially estopped from claiming that the 457(b) Plan funds are part of the estate.

*A. The 457(b) Plan Funds are not Property of the Estate*

The filing of the bankruptcy petition creates the bankruptcy estate. § 541(a). Section 541(a) is broad in scope. It provides that the estate consists of "all legal and equitable interests of the debtor in property as of the commencement of the case" as well as certain other interests.

Section 541(b), however, excludes certain classes of property from the estate. At issue in this case are subsections 541(b)(7)(A)(i)(I) and (II). The court decides the motion on section 541(b)(7)(A)(i)(II) and thus does not consider the plan participants' section 541(b)(7)(A)(i)(I) argument. Section 541(b)(7)(A)(i)(II) excludes from the estate "any amount . . . withheld by an employer from the wages of employees for payment as contribution . . . to . . . a deferred compensation plan under section 457 of the Internal Revenue Code of 1986 . . . ."

The court finds that section 541(b)(7)(A)(i)(II) excludes the 457(b) plans from the estate. No case cited by the parties squarely addresses the issue, perhaps because the application of the law to the facts is obvious. No party has described the 457(b) Plan as anything other than a 457(b) plan. Section 541(b)(7)(A)(i)(II) excludes all 457 plans from the estate without qualification.

Debtor makes three arguments in support of its motion, but none is convincing. First, debtor argues that the 457(b) Plan is not subject to ERISA because it is a "top hat" plan and for various other reasons. This argument is irrelevant to the court's determination under section 541(b)(7)(A)(i)(II), which excludes 457(b) plans regardless of whether or not they are subject to ERISA. It is irrelevant that the 457(b) Plan may be characterized as a top hat plan or anything else. The statute excludes 457(b) plan funds from the estate. Put differently, it is irrelevant if there is boundless precedent on rectangles if a statute excludes squares and the subject property is a square.

Second, debtor argues that the 457(b) Plan contributions were not "withheld by an employer" as that phrase is used in section 541(b)(7). In support of this argument, the debtor cites Schroeder v. New Century Holdings, Inc. (In re New Century Holdings, Inc.), 387 B.R. 95, 114 (Bankr. D. Del. 2008) and other cases which distinguish "deferred" compensation from "withheld" compensation and find that "deferred" compensation is property of the estate. In New Century, the court found that a "deferral" occurs where "the employee agreed to receive the income at a later date and never actually possessed it" and a withholding occurs where "the employee possessed the income at some point . . . ." Id.

By contrast, the court in In re Colonial BankGroup, Inc., 436 B.R. 695, 712 (Bankr. M.D. Ala. 2010) was critical of this view. The court found that "deferred" and "withheld" could not be mutually exclusive concepts because section 541(b)(7) excludes amounts "withheld" from "deferred" compensation plans. *See* Id. If "withheld" and "deferred" were interpreted to be mutually exclusive concepts, the statute would be a nullity, which could hardly be what Congress intended.

5

Instead, the Colonial BankGroup court found that when beneficiaries are presently entitled to income, but have made a voluntary election to make plan contributions, the income has been withheld within the meaning of the statute. Id. This interpretation is more consistent with the language of the statute as a whole and the ordinary usage of the word "withheld" as applied to retirement plans. Here, the plan participants were entitled to the plan contributions, but signed income reduction agreements to redirect a part of their salaries to the 457(b) Plan. Accordingly, the court finds that the fund were "withheld" as that term is used in 541(b). Any other linguistic machinations would serve to frustrate the clear intent of Congress.

Third, in its brief, the debtor points out that the plan, by its own terms, is subject to the claims of debtor's creditors in the event of bankruptcy. Unfortunately, this argument was not well developed. At hearing, the court twice encouraged the parties to discuss this issue to no avail. However, the court does not need to determine this issue to rule on the motion to distribute. The narrow issue before the court is whether the DIP Order grants Wells Fargo a first priority lien in the 457(b) Plan funds. The court has determined that the 457(b) Plan funds were excluded from the estate upon the filing of the bankruptcy petition and therefore ceased to be the property of the debtor. As such, the DIP order could not reach these funds because the debtor could not promise more than it had.

### B. The Debtor is Estopped from Claiming an Interest in the 457(b) Plan Funds

The debtor's conduct toward the plan participants mandates estoppel. Implicit in debtor's current argument is that the plan participants are general unsecured creditors of the estate. But the debtor's conduct prior to filing the motion to distribute is inconsistent with this view. Rather, debtor's conduct prior to the motion is consistent with the view that the estate has no interest in the 457(b) Plan funds. The plan participants were not listed on the debtor's schedules and the debtor accepted plan contributions post-petition. The debtor negotiated the DIP Order (which debtor now claims binds the plan participants) without notice to the plan participants or their participation due to not being listed as creditors or served.

Judicial estoppel is an independent basis for denying the motion to distribute. "Judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." New Hampshire v. Maine, 532 U.S. 742, 749 (2001). The purpose of the doctrine is to preserve the integrity of the judicial system. Browning v. Levy, 283 F.3d 761, 775 (6th Cir. 2002). Put more colorfully, the doctrine prevents litigants from engaging in "the perversion of the judicial machinery" by "blowing hot and cold as the occasion demands" or "having one's cake and eating it too." Id. at 775. (citing Reynolds v. Comm'r, 861 F.2d 469, 474 (6th Cir. 1988)).

To apply judicial estoppel, the Court must make three findings: first, that the party assumed a position contrary to a position taken under oath in another phase of the proceeding; second, that the Court adopted the party's original position as a preliminary matter or as part of a final disposition; and, third, that the party did not adopt the inconsistent positions as the result of

6

mistake or inadvertence. White v. Wyndham Vacation Ownership, Inc., 617 F.3d 472, 478 (6th Cir. 2010).

It is clear that the debtor has taken contradictory positions. By not listing the plan participants in its petition as unsecured creditors, and by continuing to accept plan contributions after the petition was filed, the debtor initially took the position that the estate had no interest in the 457(b) Plan funds and/or the participants were not creditors. The debtor reversed its position in filing the motion to distribute. The court adopted the debtor's original position when it entered the DIP Order because the court would not have entered the order with knowledge that an interested party had been excluded. It is also clear that the debtor did not adopt inconsistent positions as the result of mistake or inadvertence. The timing and content of debtor's letter to the plan participants as well as the debtor's failure to ever file amended schedules demonstrates that ambushing the plan participants was a tactical choice, or at least the result arising from something beyond mere mistake or inadvertence.

Obviously, the interim trustee was not directly involved in debtor's conduct. However, when a case converts, a chapter 7 trustee is bound by the acts of a chapter 11 debtor in possession. Nicholas v. United States, 384 U.S. 678, 693 n.27 (1966); Ford Motor Credit Co. v. Sherwood Ford, Inc. (In re Sherwood Ford, Inc.), 125 B.R. 957, 961 (Bankr. D. Md. 1987). As such, judicial estoppel is an independent basis for denying the motion to distribute.

An order will accompany this opinion.

\#    \#    \#

Service List:

John A Polinko
McDonald Hopkins LLC
600 Superior Avenue
Suite 2100
Cleveland, OH 44114

Melissa Giberson
McDonald Hopkins LLC
600 Superior Ave., E.
#2100
Cleveland, OH 44114

Paul W Linehan
McDonald Hopkins LLC
600 Superior Ave E
Suite 2100
Cleveland, OH 44114-2653

Shawn M Riley
McDonald Hopkins LLC
600 Superior Ave, E, #2100
Cleveland, OH 44114

Derrick Rippy ust11
Office of the US Trustee
H. M. Metzenbaum U.S. Courthouse
201 Superior Avenue
Suite 441
Cleveland, OH 44114

Christopher W Peer
Hahn Loeser and Parks LLP
200 Public Square
Suite 2800
Cleveland, OH 44114-2301

Daniel A DeMarco
200 Public Sq
Suite 2800
Cleveland, OH 44114-2301

Gregory J. Rufo
Brian K. Nam
The Rufo Law Firm
101 Central Plaza South, Suite 900
Canton, OH 44702